## Clemens v. Gillum

C.P. of Tioga County, no. 508 of 1994.

*Carol Nelson Shepard,* for plaintiffs.
*Raymond E. Ginn,* for defendant Soldiers & Sailors Memorial Hospital.
*Joseph P. Mellody,* for defendant Gillum.

LEETE, *J.,* July 1, 1998—Before the court is a motion in limine filed on behalf of plaintiffs seeking to preclude Dr. Richard Naeye from testifying as to the timing and cause of the injury allegedly suffered by Rayel Clemens, and also seeking to exclude all references to the doctor's own research. In response to a directive from the court, the defendants have filed a brief and also made an offer of proof as to what Dr. Naeye intends to state in the forthcoming trial.

The court must note this issue has been thrust upon it virtually on the eve of trial. As this writer is from a one-judge county, which has a full trial schedule, opportunities to deal with this complex issue have been limited. The fact that the trial is to commence in a few days, however, mandates a prompt decision.

The defendants readily agree that Dr. Naeye's own studies do not meet the test of *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013 (1923), as adopted by Pennsylvania Supreme Court in *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977). While this would seem to resolve the issue on the surface, such is not the case. Dr. Naeye now proposes to testify as to the timing of Rayel's injury on the basis of medical principles and studies other than his own. The question remains, however, whether or not Dr. Naeye's recently modified offer of proof dated June 18, 1998 meets the *Frye* test.

A review of this matter suggests that Dr. Naeye's ultimate opinions are based on the premise that meconium causes vasoconstriction. Dr. Naeye cites plaintiff's own expert and his 1989 study in the *Journal of Child Neurology* as generally accepted scientific evidence for his vasoconstriction assumption. Based on the materials furnished by counsel, however, this is at best debatable. Dr. Altshuler seemed to reach a different conclusion, or at best no conclusion, on this same subject matter in a 1995 published paper in the *Journal of Biology of the Neonate.* Thus, it appears that the basic premise of Dr. Naeye's proposed testimony is questionable, and that the doctor has ignored a more recent and complete, and inconclusive study on the same subject matter by the same author. There are also serious methodology questions to Dr. Naeye's own studies on vasoconstriction. See Dr. Naeye's deposition in

*Haley v. Good Samaritan Hospital,* C-1-96-272 (U.S.D.C.S.D. Ohio). Thus, Dr. Naeye's proposed testimony indicates that he is in fact relying, in his revised offer of June 18, 1998, on scientific principles and methodology which are not generally accepted within the scientific community. As such, *any* testimony as to the timing of the injury suffered by Rayel Clemens as well as any references to the doctor's own research are inadmissible.

This court is mindful of the opinion of President Judge Spicer of the Adams County Court of Common Pleas on a similar matter as published in the case of *Ritter v. Waynesboro Hospital,* 33 D.&C.4th 520 (1996). In that case, Judge Spicer ruled that Dr. Naeye perhaps could testify as to the probability that the injury occurred before the mother arrived at the hospital, if he could make such an opinion based on generally accepted principles and methodology, and if the opinion was rendered to a reasonable degree of medical certainty. In view of Dr. Naeye's reliance, however, on both studies and methodology, which are flawed or which give conclusions unsupported by generally accepted scientific evidence, his testimony must be completely precluded in accordance with *Blum v. Merrell Dow Pharmaceuticals Inc.,* 705 A.2d 1314 (Pa. Super. 1997).

As Judge Spicer noted, the proffered expert could have an independent basis for his opinion. This court is concerned about the ability of Dr. Naeye to separate his own research conclusions from more generally accepted research and scientific principles. A review of the proposed offer of June 18, 1998 convinces this court that Dr. Naeye's own research is so intertwined with his ultimate conclusions that it would be difficult, if not impossible, to separate the two regardless of the alleged basis for his ultimate opinion. As such, Dr. Naeye cannot testify.

An appropriate order follows:

ORDER

And now, July 1, 1998, plaintiffs' motion in limine is granted, and Dr. Richard Naeye is precluded from offering any testimony at trial as to the timing or cause of Rayel Clemens' injury.